UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

June 2, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:  *Simon J. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 22-2315-BAH

Dear Counsel:

On September 13, 2022, Plaintiff Simon J. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 8), the parties' dispositive briefs (ECFs 13 and 15), and Plaintiff's reply brief (ECF 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on April 20, 2020, alleging a disability onset of February 5, 2019. Tr. 190–93. Plaintiff's claim was denied initially and on reconsideration. Tr. 104–07, 114–19. On February 8, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 34–61. Following the hearing, on March 14, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 13–33. The Appeals Council denied Plaintiff's request for review, Tr. 1–7, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed

---

[1] 42 U.S.C. §§ 301 et seq.

impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 5, 2019, the alleged onset date." Tr. 18. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "hypertension; degenerative disc disease of the thoracic and lumbar spine; and obesity." Tr. 19. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "bilateral carpal tunnel syndrome (CTS), bilateral hand arthritis, diabetes mellitus, migraine headaches, gastroesophageal reflux disease (GERD), obstructive sleep apnea (OSA), fibromyalgia, COVID-19, depression, and anxiety." Tr. 20. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 23. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium exertional level work as defined in 20 CFR 404.1567(c) with the following exceptions: frequently climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing; frequently stooping, kneeling, crouching; occasionally crawling; and avoiding all exposure to hazards, such as unprotected heights or dangerous machinery.

Tr. 24. After considering testimony from a vocational expert, the ALJ determined that Plaintiff was able to perform past relevant work as a chief guard (DOT[2] #372.167-014). Tr. 27. The ALJ also made alternative findings—specifically, that Plaintiff could perform jobs that existed in significant numbers in the national economy, including automobile detailer (DOT #915.687-034), laboratory equipment cleaner (DOT #381.687-022), and agricultural produce packer (DOT #920.687-134). Tr. 29. Therefore, the ALJ concluded that Plaintiff was not disabled. *Id.*

### III. <u>LEGAL STANDARD</u>

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept

---

[2] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ's evaluation of his non-severe fibromyalgia "fails to comport" with Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012), and with the Fourth Circuit's holding in *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020). ECF 13, at 9. Specifically, Plaintiff avers that the ALJ erred by "impermissibly discarding [his] statements concerning the intensity, persistence[,] and limiting effects of his symptoms based on objective medical evidence" and based on Plaintiff's "conservative" course of treatment.[3] *Id.* at 13–16. Defendant counters that, under relevant law, the ALJ was not required to accept allegations which were inconsistent with the available evidence. ECF 15, at 6–7. Defendant further avers that the ALJ permissibly "considered Plaintiff's allegations of pain and fatigue from his various impairments when formulating the RFC finding, and cited to substantial evidence, without relying solely or primarily on objective evidence, in evaluating Plaintiff's subjective complaints." *Id.* at 8 (citing Tr. 24–27).

"In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test." *Larry W. v. Kijakazi*, No. TJS-21-693, 2022 WL 986107, at *3 (D. Md. Apr. 1, 2022) (citing *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); 20 C.F.R. § 404.1529(a)). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. *Id.* (citing 20 C.F.R. § 404.1529(b)). Once the claimant makes that showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. *Id.* (citing 20 C.F.R. § 404.1529(c)). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id.* To evaluate a claimant's statements, an ALJ must "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." *Id.* (quoting SSR 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016)); *see also* SSR 12-2p, 2012 WL 3104869, at *6 (directing ALJs to "consider a longitudinal record whenever possible" when evaluating fibromyalgia under two-part test, "because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days'").

The Fourth Circuit has "consistently held that 'while there must be objective medical

---

[3] While Plaintiff contends that the ALJ improperly rejected his complaints of pain, he does not argue that the ALJ failed to discuss any such complaints or evidence related to his fibromyalgia symptoms. ECF 13, at 12–17.

evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity.'" *Arakas*, 983 F.3d at 95 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)). "Rather, a claimant is 'entitled to rely exclusively on subjective evidence to prove the second part of the test.'" *Id*. (quoting *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006)). In *Arakas*, the Fourth Circuit found that the ALJ properly concluded that the claimant's "medically determinable impairments 'could reasonably be expected to cause some of the alleged symptoms,' thus satisfying the first step of the symptom-evaluation framework." *Id*. at 96. "But at the second step, the ALJ improperly discredited [the claimant's] statements about the severity, persistence, and limited effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'" *Id*. (internal citations omitted). "Because [the claimant] was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,' the ALJ 'applied an incorrect legal standard' in discrediting her complaints based on the lack of objective evidence corroborating them." *Id*. (alterations in original) (internal citations omitted). The Fourth Circuit concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id*. (quoting *Lewis*, 858 F.3d at 866).

Here, at step two, the ALJ noted that while the medical evidence of record "reflects the requisite number [of] objective tender point findings and sufficient fibromyalgia signs or symptoms to meet the requirements . . . set forth by SSR 12-2p, . . . [the] objective findings or signs supporting the presence of fibromyalgia appear to precede the alleged onset date[.]" Tr. 21. The ALJ also found that because Plaintiff did not use medications to treat fibromyalgia during certain periods, his fibromyalgia was "not unduly persistent or intense." *Id*. Given these findings, the ALJ determined that Plaintiff's fibromyalgia was not severe.[4] Tr. 20.

The ALJ then proceeded to evaluate Plaintiff's symptoms and the extent to which they limit his capacity to work. But, contrary to Plaintiff's assertions, this process comported with 20 C.F.R. § 404.1529 and the requirements delineated in *Arakas*, as the ALJ did not require Plaintiff to produce "objective evidence" to corroborate subjective complaints of pain. *Arakas*, 983 F.3d at 96. Specifically, the ALJ noted Plaintiff's allegations of fatigue, back pain, weakness, and difficulties in performing certain work-related physical activities. Tr. 25. She then determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id*. As rationale for this determination, the ALJ noted that most of the physical findings in the record were "grossly normal" despite Plaintiff's complaints of pain. Tr. 26–27. The ALJ also noted that Plaintiff's activities were inconsistent with his allegations of pain because, among other reasons, Plaintiff was able to walk "from storefront to storefront approximately once a week for several hours[.]" Tr. 26. The ALJ also considered consultative findings from 2020 which noted that Plaintiff "demonstrated 5/5 motor strength universally, normal sensation universally, negative straight-leg raises, normal reflexes, no joint swelling or tenderness, and normal fine and gross

---

[4] Plaintiff does not argue that the ALJ erred by determining his fibromyalgia to be non-severe.

manipulation." Tr. 25.

In light of this analysis, it is apparent that the ALJ merely took into account the longitudinal evidence of Plaintiff's treatment history when evaluating Plaintiff's subjective complaints and formulating the RFC. Such evaluation remains permissible under *Arakas*. *See Mahot v. Kijakazi*, No. 3:21-CV-114-MOC, 2022 WL 893111, at *4 (W.D.N.C. Mar. 25, 2022) (distinguishing *Arakas* and affirming an ALJ's decision where the ALJ considered the claimant's own prior statements, treatment records, statements from medical sources, and objective evidence and incorporated some limitations due to fibromyalgia into the RFC but ultimately concluded that the claimant was not disabled); *Stiles v. Comm'r of Soc. Sec.*, No. 1:21-CV-00085-RJC, 2022 WL 3256876, at *6 (W.D.N.C. Aug. 10, 2022) (distinguishing *Arakas* and affirming an ALJ's decision where the ALJ incorporated limitations in the RFC to accommodate the claimant's symptoms of severe fibromyalgia); *Heather R. v. Saul*, No. 4:20-CV-04082-VLD, 2021 WL 3080331, at *20 (D.S.D. July 21, 2021) (affirming an ALJ's decision where the ALJ "consider[ed] all the longitudinal evidence, which includes objective medical evidence as well as [the claimant's] daily activities," and "incorporated significant limitations into her RFC on account of those [fibromyalgia] symptoms"). What is more, even after *Arakas*, ALJs are permitted to weigh subjective complaints of against objective evidence of a claimant's pain-causing impairments that produce such evidence. *See John O. v. Kijakazi*, No. AAQ-21-01378, 2022 WL 2305255, at *4 (D. Md. June 27, 2022) (distinguishing *Arakas* and affirming the ALJ's decision where the ALJ discounted the claimant's subjective complaints based on objective medical evidence—rather than a *lack* of objective evidence as was impermissible in *Arakas*—and discussed the claimant's qualifying statements about his ability to perform activities of daily living). Indeed, a claimant's allegations about his pain "need not be accepted to the extent [that] they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably be expected to cause the pain the claimant alleges [he] suffers." *Craig*, 76 F.3d at 595. Accordingly, because the ALJ based her determination upon the longitudinal treatment record, as well as Plaintiff's reported activities, rather than a lack of objective evidence, *Arakas* does not compel remand.

Plaintiff also contends that the ALJ erroneously "disregarded the nature of fibromyalgia symptomology pursuant to SSR 12-2p" because she "belie[ved] that the cited objective evidence . . . is a relevant indicator of fibromyalgia severity[.]" ECF 13, at 13. But, as SSR 12-2p makes clear, objective evidence is not only relevant, but necessary to evaluating fibromyalgia's severity. *See* SSR 12-2p, 2012 WL 3104869, at *3 (July 25, 2012) ("As in all claims for disability benefits, we need objective medical evidence to establish the presence of an [impairment]. When a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment."). Given this, the ALJ's decision also comported with SSR 12-2p.

As a final matter, the ALJ properly considered Plaintiff's limited treatment history in evaluating his fibromyalgia. Plaintiff relies on *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010), for the proposition that a "claimant 'cannot be discredited for failing to pursue non-conservative treatment options for fibromyalgia' since 'none exist.'" ECF 13, at 16 (citing

*Lapeirre-Gutt*, 383 F. App'x at 664). But *Lapeirre-Gutt* is distinguishable from the instant case. There, the ALJ discounted the claimant's testimony on the basis that the claimant did not pursue physical therapy, and characterized the claimant's treatment, "consisting of copious amounts of narcotic pain medication as well as occipital nerve blocks and trigger point injections," as "conservative." *Lapeirre-Gutt*, 383 F. App'x at 664. Here, while the ALJ mentioned that "[t]he medical evidence . . . reflects only some conservative or minimal treatments," Tr. 26, a careful review of the decision makes clear that, unlike in *Lapeirre-Gutt*, the ALJ did not take issue with Plaintiff's *method* of treatment. Rather, she merely noted the "sparse" nature of Plaintiff's treatment history for many of Plaintiff's alleged impairments, not just fibromyalgia. *See, e.g.*, *id.* ("This sparse treatment history [of Plaintiff's hand pain, CTS, and hypertension] and the few physical examination findings of record, notably those unremarkable with treatment medical professionals, suggests that the claimant is able to perform medium work . . . ."); Tr. 27 (noting that the RFC is supported by "evidence of sparse treatment" and "evidence that even minimal treatment was effective"); *see also* Tr. 21 (noting that Plaintiff's failure to treat fibromyalgia with medication during certain periods "suggests [that] it is not unduly persistent or intense"). The Fourth Circuit has held that an ALJ may consider a claimant's treatment history among other factors when evaluating credibility. *See Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015); *see also Monroe v. Colvin*, 826 F.3d 176, 189–90 (4th Cir. 2016) (noting that an ALJ must also explain what is meant by "conservative treatment," and how that treatment was successful in managing the claimant's symptoms). Because the ALJ here properly considered Plaintiff's scant treatment history and explained that the record indicates that minimal treatment was effective, the ALJ's evaluation of Plaintiff's treatment history does not compel remand.

In sum, Plaintiff's argument regarding the SSA's evaluation of her fibromyalgia amounts to a request to reweigh the evidence, which I am not permitted to do. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."). As such, I am constrained to find that the SSA's evaluation of these complaints was supported by substantial evidence.

V.  **CONCLUSION**

For the reasons set forth herein, the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge